IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

Melissa Sager,                    *

          Plaintiff
                                  *
     V.
                                  *     CIVIL NO. SKG-11-02631
Housing Commission of Anne
Arundel County, et al.            *

          Defendants.       *


     *     *     *     *     *     *     *     *     *     *     *     *     *


## MEMORANDUM OPINION

Now pending before this Court is defendants' motion for partial summary judgment, (ECF No. 36), and plaintiff's cross-motion for partial summary judgment. (ECF No. 40). A hearing was held on May 9, 2013. Both parties have submitted supplemental briefing at the Court's request. (ECF No. 47; ECF No. 51; ECF No. 52). For the reasons set forth herein, both motions are GRANTED in part and DENIED in part.

## I.   Background

Plaintiff is a public housing tenant living in property owned and operated by the Housing Commission of Anne Arundel County ("HCAAC"). (ECF No. 25, ¶ 8). Defendants are HCAAC,

1

Clifton Martin as the Executive Director of HCAAC, and Diana Flynn as a Senior Property Manager for HCAAC. (Id. at ¶¶ 2-4). For purposes of these cross motions for summary judgment, the parties' dispute is limited to the validity of a clause in plaintiff's lease requiring a tenant to specifically and in writing designate his monthly payment as "rent" or "for rent" for it to be considered as such. This clause thus allows HCAAC to apply undesignated payments from a tenant first towards outstanding maintenance charges, late fees, or legal fees, and then to rent.[1] (ECF No. 36-1, 2-4).

## A. The "Allocation" Clause and its Operation

In May of 2010, plaintiff entered into a lease with HCAAC. (ECF No. 25, ¶ 8). The lease signed by plaintiff contained the following "allocation" clause:

> Any payment by the Tenant to the Landlord under this Lease which is not specifically designated, in written notation, as "rent" or "for rent" may be applied at the Landlord's option, as follows: first to outstanding maintenance charges and/or late fees and/or legal fees and secondly to rent.

(ECF No. 36-3, 4). The parties do not dispute the inclusion of this clause in the lease or plaintiff's signature on the lease.

---

[1] Independent of issues relating to the allocation clause, plaintiff raises several additional claims. In Count I of her complaint, she brings a claim arising from defendants' conduct in having her sign a "Vacate Agreement" in November of 2010; in Count IV, plaintiff complains that she was discriminated against based upon her medical disability in violation of the Fair Housing Act when defendants denied her requests to transfer; and, in Count V, she raises a challenge to the written decision and the impartiality of the panel during her formal grievance hearing. (ECF No. 36-1, 3).

The clause functions as follows.  A tenant is charged for a maintenance repair in his unit.  The tenant has the right to grieve this charge.[2]  If this right to grieve is waived, or the tenant is unsuccessful in his grievance, the charge remains outstanding.  At this point, if the tenant does not pay the charge, HCAAC may use any unallocated payment from the tenant to satisfy this debt.  If, for example, the tenant makes a payment at the beginning of the following month in the exact amount of his rent, but fails to mark his payment as "rent" or "for rent," this payment may be diverted towards the outstanding maintenance charge.  As a result, some or all of his rent remains unpaid.

If the tenant does not then pay the unpaid rent—in effect, make a further payment—HCAAC may initiate summary ejectment proceedings against the tenant under Section 8-401 of the Real Property Article, Md. Code (1974, 2003 Repl.Vol., 2009 Supp.)("R.P.") for failure to pay rent.  A tenant's claim in that proceeding that he did, in fact, make his monthly rental payment will be unsuccessful, as HCAAC diverted this payment towards other charges, leaving some or all of the rent due.  The result is that a tenant who pays to the landlord the amount of "rent" due under the lease and governing law, but fails to denominate it as such, may be evicted from public housing through a summary ejectment process reserved solely for a

---

[2] The grievance process is discussed in more detail in Section III(D), infra.

failure to pay rent.  If, however, the tenant makes a payment, marking that payment as "rent" or "for rent," none of that payment can be applied to any outstanding maintenance charges, late fees or legal fees.  Rather, the HCAAC must move against the tenant under other state proceedings to recover these non-rent charges and fees.

## B. Ms. Sager's Situation

The relevant undisputed facts here illustrate HCAAC's use of the allocation clause.  On November 29, 2010, plaintiff was notified that she owed $380.00 in maintenance charges for "flooding," "excessive cleaning," and "kitchen sink."  (ECF No. 2-2, 1).  The notification letter informed plaintiff of her "right to an informal hearing on this matter in accordance with our grievance procedure, providing you request same within ten (10) working days . . . of the date of this letter."  (Id.).  She was also informed of her right to a formal grievance proceeding, where she could be represented by counsel, present evidence, and refute any evidence against her.  (Id.).

Also on November 29, plaintiff received notice that her tenancy was terminated effective December 8, 2010, due to "violations of material terms of your lease."  (ECF No. 8-3, 4).  The reasons stated were ownership of a pet without necessary documentation, "deplorable" conditions in the unit, damage

relating to the kitchen faucet being left running, and two occasions when smoke was observed coming from the apartment due to the stove being left on. (Id. at 6-8). She was also advised of her right to grieve the termination. (Id. at 10).

Plaintiff timely requested an informal grievance hearing relating to "your letter dated Novemeber [sic] 29th, 2010," although she did not specify whether she sought to grieve the lease termination or the maintenance charges. (ECF No. 51, 2). An informal hearing was held on December 9, 2010. A written decision was sent to plaintiff, in which "Termination of Lease from Public Housing Unit" was listed as the reason for the hearing. (ECF No. 8-4, 55). The decision detailed the testimony and evidence presented at the hearing, and ultimately upheld the termination. (ECF No. 8-4, 55-56).

Thereafter, plaintiff timely requested a formal hearing. (ECF No. 51-3). Again, plaintiff did not specify the reason for the grievance.[3] The parties agree that plaintiff's request did not comply with HCAAC's policy, which requires a grievant to

---

[3] The parties assert that there is a narrow factual dispute as to whether Ms. Sager attempted to grieve the maintenance charges at issue. Plaintiff contends that her grievance "encompasses the contents of the termination letter in its entirety," and as such included both the lease termination and the maintenance fees. (ECF No. 51, 4). Defendants reply that plaintiff never attempted to dispute the fees, a conclusion that "can be inferred from the hearing decision, which makes no reference to it [the fees]." (ECF No. 51, 4). Defendants also point to plaintiff's counsel's January 18, 2011 letter, "which references the termination as an issue but makes no mention of the maintenance charges." (ECF No. 51, 4). As such, defendants argue that plaintiff voluntarily chose not to grieve these maintenance charges. The Court will more closely consider the impact of this dispute in its analysis of plaintiff's due process claim infra.

state both the reason for the grievance and the relief sought. (ECF No. 51, 2). Plaintiff retained counsel for the formal hearing, however, and in a letter requesting a change of hearing date, counsel noted that plaintiff had contacted her "for assistance with a formal grievance hearing to consider termination of her public housing assistance at Pinewood Village East." (ECF No. 51-4, 1). The hearing was held on February 14, 2011. (ECF No. 51, 3). The termination was again upheld. (Id.).

Throughout the grievance process, plaintiff continued to timely make rental payments. On March 7, 2011, HCAAC exercised its option under the allocation clause to apply plaintiff's March 1 undesignated payment towards the outstanding maintenance charges. (ECF No. 2-5, 1). It did the same with plaintiff's April 2011 payment. (Id.). It is undisputed that these payments were for $192.00, the exact amount of plaintiff's rent. (ECF No. 47, ¶¶ 15-18). However, plaintiff did not designate either of these payments as "rent" or "for rent." (ECF No. 47, ¶ 14).

On March 14, 2011, HCAAC filed a Failure to Pay Rent action under R.P. § 8-401 against plaintiff seeking ejectment based on plaintiff's alleged failure to pay rent due on March 1, 2011. (ECF No. 25-1, 1). Plaintiff produced a receipt for rent paid in March and the case was

dismissed.  (Id.).  At a second summary ejectment hearing
in April, however, the judge ruled in favor of HCAAC, after
a showing by HCAAC that it had used plaintiff's April
payment towards maintenance charges, leaving rent due.
(ECF No. 25-2, 1). The judge determined that plaintiff owed
$384.00 in unpaid rent.  (Id.).

Plaintiff asks this Court to find the allocation
clause invalid as a matter of law, under several federal
and state laws.  Defendants ask the Court to declare the
allocation clause valid, under the same laws.

## II.  Standard

Summary judgment under Rule 56 is appropriate when "there is
no genuine dispute as to any material fact and the movant is
entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).
A genuine dispute remains "if the evidence is such that a
reasonable jury could return a verdict for the nonmoving party."
Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct.
2505, 2508 (1986).  "Material" facts are those that might affect
the outcome of the case under the governing law.  Id.  The party
moving for summary judgment has the burden of demonstrating the
absence of any genuine issue of material fact.  Fed. R. Civ. P.
56(a); Pulliam Inv. Co. v. Cameo Props., 810 F.2d 1282, 1286
(4th Cir. 1987).

When considering a motion for summary judgment, the court views all facts and makes all reasonable inferences in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986). The non-moving party must show that specific, material facts exist to create a genuine, triable issue. Id.; see also Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S. Ct. 2548, 2553 (1986). On those issues for which the non-moving party has the burden of proof, it is his or her responsibility to oppose the motion for summary judgment with affidavits or other admissible evidence specified in the rule. Fed. R. Civ. P. 56(c); Mitchell v. Data Gen. Corp., 12 F.3d 1310, 1315-16 (4th Cir. 1993). If a party fails to make a showing sufficient to establish the existence of an essential element on which that party will bear the burden of proof at trial, summary judgment is proper. Celotex, 477 U.S. at 322-23.

The role of the court at the summary judgment stage is not to "weigh the evidence and determine the truth of the matter," but rather to determine whether "there are any genuine factual issues that can properly be resolved only by a finder of fact because they may be resolved in favor of either party." Anderson v. Liberty Lobby, 477 U.S. 242, 249-50, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). The issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or

whether it is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 251-52.

The fact that parties file cross-motions for summary judgment does not generally relieve the court of its obligation to determine whether there are disputes as to material fact which prevent entry of judgment as a matter of law. Bryant v. Better Bus. Bureau of Greater Maryland, Inc., 923 F. Supp. 720, 729 (D. Md. 1996)("[C]ross-motions for summary judgment do not automatically empower the court to dispense with the determination of whether questions of material fact exist.")(quoting Lac Courte Oreilles Band of Lake Superior Chippewa Indians v. Voigt, 700 F.2d 341, 349 (7th Cir.), cert. denied, 464 U.S. 805, 104 S. Ct. 53 (1983)). When cross-motions for summary judgment demonstrate a basic agreement, however, concerning what legal theories and material facts are dispositive, they may be probative of the lack of a factual dispute. Shook v. United States, 713 F.2d 662, 665 (11th Cir. 1983).

## III. Discussion

In her challenge to this lease provision, plaintiff identifies several laws which she believes it violates. None are an easy, straightforward fit. There is little precedent precisely on point. This lease provision is, however, unworthy of an agency dedicated to the provision of decent, affordable

housing to those of low income, and inconsistent with the
purpose and provisions of housing law.  Accordingly, the Court
has determined that the clause violates the United States
Housing Act and the Brooke Amendment thereto.  Moreover, in its
purposeful conflation of "rent" and other charges and fees, the
lease provision violates Section 8-208 of the Maryland Real
Property Article.  R.P. § 8-208.  Finally, the Court has found
the allocation clause to violate the Maryland Consumer
Protection Act ("MCPA"), Md. Code (2005 Repl. Vol., 2011 Supp.),
§§ 13-101 et seq. of the Commercial Law Article ("C.L.").[4]

Before addressing each of plaintiff's legal claims
individually, it is critical to understand the broad federal and
state statutory and regulatory framework governing the public
housing tenant.  The Housing Act seeks to "remedy . . . the
acute shortage of decent and safe dwellings for low-income
families."  42 U.S.C. 1437(a)(1)(A).  The Act furthers this
purpose by ensuring that public housing leases include fair and
reasonable terms that allow low-income tenants to maintain a
residence in affordable housing.  Title 42 of the United States
Code, Section 1437a(a)(1), commonly known as the Brooke
Amendment, caps a public housing tenant's rent at 30% of the
"family's adjusted monthly income."  Title 42, Section 1437d of

---

[4] As set forth below, the Court rejects plaintiff's arguments under the Due
Process Clause and Federal Fair Housing and Amendments Act of 1988 and grants
defendants' summary judgment on those counts.

the Code regulates other lease terms, including provisions related to lease termination, and requires that leases "do not contain unreasonable terms and conditions." 42 U.S.C. 1437d(l)(2).

This regulation of public housing leases is essential because public housing tenants are a particularly vulnerable group. They often have few practical housing alternatives. Public housing leases are rarely negotiated and are generally, as here, presented to tenants on a take it or leave it basis. Indeed, one commentator has observed that a public housing lease is "the epitome of a contract of adhesion." R. Schoshinski, Public Landlords and Tenants: A Survey of the Developing Law, 1969 DUKE L.J. 399, 468 (1969).

Important for purposes of this decision, federal law confers on plaintiff, as a public housing tenant, the right to remain in her public housing unit so long as she pays her rent and refrains from actions deemed, after a hearing, to be "serious or repeated violation of the terms or conditions of the lease or . . . other good cause." 42 U.S.C. § 1437d(l)(5).[5] Maryland law mirrors these requirements: if a tenant fails to pay her "rent,"

---

[5] The entitlement to continued occupancy is such that for purposes of calculating the value of possession, courts use "not simply the monthly rental" payment, but the value of housing through the rest of the tenant's life. Carroll v. Hous. Opportunities Com., 306 Md. 515, 527 (Md. 1986) (finding the value of the right to occupy should be computed "over the tenant's remaining life span, or at least over a period of years," and as such exceeds the $500 minimum required to entitle plaintiff to a jury trial).

she is subject to summary ejectment proceedings. R.P. § 8-401.
However, if a tenant fails to pay other properly imposed
charges, such as maintenance fees, she may be subject to
eviction under state law, but only after a more fulsome
proceeding and a finding that the failure to pay the fees is a
"substantial" breach of her lease that warrants an eviction.
R.P. § 8-402.1; Brown v. Hous. Opportunities Comm'n of
Montgomery Cnty., 350 Md. 570, 574 (Md. 1998).

The allocation clause imposes on tenants, including
plaintiff, a wholly gratuitous obligation in order to retain
their statutory right to tenancy as described above. That is, a
tenant must mark each of her monthly rental payments as "rent"
or "for rent," with potentially dire consequences if she fails
to do so. It is always in a tenant's interest to have her
payments applied first to rent, and then to maintenance or other
fees. No rational tenant would knowingly choose to allow HCAAC
to divert her rent payment—essentially volunteering for a
summary ejectment proceeding and potential eviction for non-
payment of rent. This is a "gotcha" provision that deprives
HCAAC tenants of the protection of the law with no identifiable
counter balancing benefit to the tenant.

As is discussed in more detail herein, while the Court
appreciates HCAAC's need to efficiently collect maintenance
charges, this particular method is predatory, unlawful, and

unreasonable.  It attempts a short cut — a "work around" the more protective procedural and substantive rights afforded all tenants under federal and state housing law.

Now the Court will examine the allocation clause under the various laws that plaintiff uses to challenge it.

## A. Validity of the Allocation Clause Under Real Property Article § 8-208(d)

Section 8-208(d)(2) of the Maryland Real Property Article mandates that a "landlord may not use a lease or form of lease containing any provision that . . . has the tenant agree to waive or to forego any right or remedy provided by applicable law."  R.P. § 8-208(d)(2).  Plaintiff argues that because the lease provision "effectively waives a tenant's right to contest charges in a judicial proceeding," it is invalid under § 8-208 and is therefore unenforceable.  (ECF No. 40-1, 20).  Elsewhere in her brief, but relevant to this analysis, plaintiff argues that the lease provision allows HCAAC to "forego the requirement that they prove the tenant's failure to pay an alleged debt is a 'serious or repeated violation of the lease' or constitutes 'other good cause' for termination under [42 U.S.C. 1437d(l)(5)] and its implementing regulations."  (ECF No. 40-1, 22).  The Court agrees.

Defendants do not respond at length to plaintiff's § 8-208(d)(2) argument, noting only that in an earlier motion to

dismiss opinion in this case, Judge Hollander found that the allocation clause did not constitute a confession of judgment under R.P. § 8-208(d)(1). (ECF No. 41, 17). Section 8-208(d)(1) deals only with an authorization for confessed judgment in a lease. While the Court agrees with Judge Hollander's conclusion regarding § 8-208(d)(1), a confessed judgment has a specific legal meaning and is distinct from the broader prohibition of a waiver of "any right or remedy provided by applicable law" contemplated by § 8-208(d)(2). As such, the ruling regarding § 8-208(d)(1) does not bar a separate analysis of § 8-208(d)(2).

In several places throughout the briefing, however, defendants emphasize the discretionary nature of the clause: "[a]ll control rests with the tenant—until tenant cedes control." (ECF No. 41, 21). Defendants assert that plaintiff "overlook[s] that the tenant always has the first right to designate the payment." (Id. at 8).

This argument fails because it proposes that a conditional waiver of an absolute right has a place in a public housing lease.[6] A rent-paying public housing tenant has an unassailable,

---

[6] While there are few cases directly on point, it is helpful here to consider waivers in other contexts. For example, an individual may waive constitutional rights, but only upon a showing that she "knowingly and voluntarily" did so. Brewer v. Williams, 430 U.S. 387, 412, 97 S. Ct. 1232, 1246 (1977). In determining whether a waiver was knowing and voluntary, courts have considered the party's background and experience, the clarity of the agreement, and whether the party was represented by an attorney. Nose v.

not conditional, right to the procedural protections relevant here.

The allocation clause is simply a trap for the unwary. It is likely that many tenants, like Ms. Sager, do not regularly mark their monthly rental payment as "rent" or "for rent." As a result, a tenant who has made monthly payments without incident, potentially over the course of years, may suddenly be told that his latest payment is not in fact "rent," but merely an unallocated payment which HCAAC can apply as it sees fit.

HCAAC's practice in this regard is not merely predatory, but runs contrary to federal regulations defining "rent" in public housing leases. As noted _supra_, the operation of public housing, including public housing leases, is subject to comprehensive federal regulation.[7] Sager v. Hous. Comm'n, 855 F. Supp. 2d 524, 531 (D. Md. 2012). Among other things, these regulations explicitly define particular lease terms, including

---

Att'y Gen. of U.S., 993 F.2d 75, 79 (5th Cir. 1993). While this test is not binding here, it is relevant to note that plaintiff was not experienced in housing law, was not clearly informed by the agreement of the consequences—in terms of her rights under Maryland law—of failing to allocate a payment, and was not represented by counsel. This was a conditional waiver agreed to by an individual with minimal experience, power, or alternate options.

[7] Defendants assert in briefing that the "rule of law in Maryland has long given the debtor the first option to direct the application of the payments, then it is left to the creditor." (ECF No. 36-1, 14-15). Notably, however, defendants acknowledge that "there are no identifiable cases on point in the area of leases or public housing." (Id.). Public housing leases are subject to extensive regulation under federal law, and as such are unique and entirely distinct from most private agreements. See e.g., Hous. Auth. & Urban Redevelopment Agency of City of Atl. City v. Taylor, 171 N.J. 580, 586 (2002) ("A court must enforce a lease as it is written, absent some superior contravening public policy."). Maryland case-law dealing with debts between private parties holds little relevance here.

rent.  24 C.F.R. § 5.603 ("Definitions").  Rent is defined as

the "amount payable monthly by the family as rent to the [PHA]."

24 C.F.R. 5.603(b); see also Miles v. Metro. Dade County, 916

F.2d 1528, 1531 (11th Cir. 1990).  This definition does not

require a specific allocation of a monthly payment.  Rent is

simply the fixed monthly payment made by tenant to the PHA.  It

is undisputed here that plaintiff has made each of her monthly

payments, in the correct amount owed, to HCAAC.  These payments

were exactly in line with the regulatory definition of rent.  As

such, the Court finds that plaintiff obviously was paying her

"rent" as a public housing tenant.

The HUD Public Housing Occupancy Guidebook lays out the

importance of this status.  The Guidebook notes that "many state

statutes draw a distinction between lease termination and

eviction actions for non-payment of rent and such actions for

'other good cause.'"  U.S. Department of Housing and Urban

Development, Public Housing Occupancy Guidebook, p. 193,

available at

http://portal.hud.gov/hudportal/HUD?src=/program_offices/public_

indian_housing/programs/ph/rhiip/phguidebook.  The Guidebook

allows that "PHAs may certainly terminate leases under Federal

law for reasons other than a failure to pay rent," but dictates

that "such lease terminations are 'good cause' terminations, not

non-payment terminations."  Id.  These guidelines are relevant

here, as Maryland distinguishes between good cause evictions and those for non-payment of rent.

A Maryland public housing tenant who fails to pay rent is subject to an expedited summary ejectment action.  Summary ejectment actions for failure to pay rent are governed in Maryland by R.P. § 8-401.  Actions under that statute are "expedited" proceedings, designed to allow a landlord to "rapidly and inexpensively obtain repossession of his premises" after a tenant fails to pay rent.  Sager v. Hous. Comm'n, 855 F. Supp. 2d 524, 538 (D. Md. 2012); McDaniel v. Baranowski, 419 Md. 560, 586 (Md. 2011).  These proceedings are strictly limited to the "relatively straightforward" calculation of rent due. McDaniel, 419 Md. at 586.  Pretrial discovery is not permitted in a summary ejectment action, see Md. Rule 3-711, and, if the court determines that rent is due, it may "order that possession of the premises be given to the landlord, or the landlord's agent or attorney, within 4 days after the trial."  R.P. § 8-401(c)(3).

A tenant who breaches a covenant in the lease other than the covenant to pay rent is better protected from the possibility of eviction.  Breaches of other lease covenants, such as a failure to pay maintenance charges, are governed by R.P. § 8-402.1. Under § 8-402.1, a landlord may only obtain possession of the premises on a showing that the tenant's failure to remit the

"other charges" is not only a breach of the lease, but is also a "substantial" breach that "warrants an eviction." R.P. § 8-402.1(b)(1); Sager, 855 F. Supp. 2d at 557. Courts considering a § 8-402.1 action are directed "to weigh all of the relevant factors before declaring a forfeiture and evicting the tenant, including the actual loss or damage caused by the violation at issue, the likelihood of future violations, and the existence of effective alternative remedies for past or existing violations." Brown v. Housing Opportunities Comm'n, 350 Md. 570, 584 (Md. 1998). In general, a proceeding under R.P. § 8-402.1 moves at a slower pace than a § 8-401, and provides greater procedural protection, such as pre-trial discovery. Sager, 855 F. Supp. 2d at 557; Hudson v. Hous. Auth. of Baltimore City, 402 Md. 18, 28-35 (Md. 2007).

Plaintiff, as a rent-paying tenant who failed to pay maintenance charges, was entitled to a § 8-402.1 proceeding to determine whether this violation was a "substantial" breach of her lease.[8] Through use of the allocation clause, however, HCAAC diverted her rental payment towards maintenance charges, exposing her to a non-payment proceeding under § 8-401. As a result, plaintiff was denied her right to pre-trial discovery guaranteed by 8-402.1. She was also denied the opportunity to

[8] The Court recognizes here that plaintiff was accused of various lease violations, such as poor maintenance of the unit and ownership of pets. These violations must also be dealt with through a § 8-402.1 proceeding.

make the case that her alleged violations were not a substantial breach that warranted eviction.[9]  These rights are not insignificant: a tenant with a relatively small disputed maintenance debt could make a reasonable case that the debt was not a substantial breach of lease.[10]  In short, these rights can mean the difference between a tenant maintaining her home and eviction.

Accordingly, the Court finds that the allocation clause operates as a waiver of rights in violation of R.P. § 8-208(d). Under state law a tenant has the right <u>not</u> to be summarily evicted except for failure to pay rent.  While the lease provision does not <u>totally</u> waive a tenant's right to procedural protections, it waives the tenant's unconditional right to such protections.  A rent-paying tenant should not bear the burden of ensuring that she is granted rights guaranteed under state law. Indeed, the sole purpose of a statute such as § 8-208(d) is to ensure that a tenant is not led to waive guaranteed rights in a lease.  This is exactly what the allocation clause achieves.  As such, the clause is invalid under § 8-208(d).

---

[9] This practice is also likely violative of the guarantee that an adverse grievance decision does not impact the tenant's right to "judicial review in any judicial proceedings, which may thereafter be brought in the matter." C.F.R. § 966.57(c).  A tenant who continues to dispute a maintenance charge after an adverse grievance decision may continue their challenge in a § 8-402.1 proceeding or a conventional civil case.  <u>Sager</u>, 855 F. Supp at 556. Here, HCAAC's use of the allocation clause deprives plaintiff of this opportunity.

[10] As noted <u>supra</u>, plaintiff here may have faced a more difficult challenge, as she allegedly violated several lease terms.  Nonetheless, she was entitled to the right to challenge these allegations in a § 8-402.1 proceeding.

**B. Validity of the Allocation Clause Under the Brooke Amendment**

In several places in her complaint and in briefing this motion, plaintiff argues that the allocation clause serves to conflate rent with "other" charges in violation of federal law. Central to plaintiff's argument is the Brooke Amendment, a federal statute enacted to "ensure that public housing rent is affordable for very low income families." Rep. No. 91-392 (1969), reprinted in 1969 U.S.C.C.A.N. 1524, 1541. The Amendment places a ceiling on rental prices at "30 per centum of the family's monthly adjusted income." 42 U.S.C. § 1437a(a)(1).

As the statute hinges on a precise calculation of rent, the Amendment's governing regulations clearly demarcate between "tenant rent" and "other charges." As noted <u>supra</u>, rent is defined as the "amount payable monthly by the family as rent to the [PHA]." 24 C.F.R. 5.603(b); <u>see also</u> <u>Miles</u>, 916 F. at 1531. "Other" charges, which do not count towards the statute's rent ceiling, include "charges to the tenant for maintenance and repair beyond normal wear and tear and for consumption of excess utilities." 24 C.F.R. § 966.4(b)(2).

As these two categories of payment are plainly demarcated, a PHA may not use a lease provision to expand the definition of rent to include maintenance charges. <u>Miles</u>, 916 F.2d at 1532 ("These explicit regulations imply that the drafters did not

intend to give the PHAs discretion to decide whether a particular charge is 'rent.'").  Expanding rent to include "other" charges serves to raise a tenant's rent above the Brooke Amendment's statutory ceiling.  See Brattleboro Hous. Auth. v. Parker, 269 B.R. 522, 533 (D. Vt. 2001).  As such, courts have found that lease provisions that define "other" charges as "additional" or "added" rent to be contrary to the Brooke Amendment and unenforceable.  See Hous. Auth. & Urban Redevelopment Agency v. Taylor, 796 A.2d 193, 201 (N.J. 2002); Binghamton Hous. Auth. v. Douglas, 630 N.Y.S.2d 144, 145 (N.Y. App. Div. 3d Dep't 1995).

Plaintiff argues that the allocation clause impermissibly expands the definition of rent in violation of the Brooke Amendment.  The consequence of the clause, plaintiff argues, is that a tenant who has timely made his rental payments may be subject to a state proceeding for non-payment of rent.  (ECF No. 42, 13).  This outcome, plaintiff contends, "turns the Brooke Amendment on its head."  (ECF No. 40-1, 23).  In effect, "the tenant must come up with a second rental payment . . . to avoid a judgment for possession being entered against her."  (Id. at 17).

In reply, HCAAC acknowledges that, unlike a private landlord, a PHA cannot broaden rent to include "other charges," such that these charges could be collected in a summary ejectment

proceeding.[11]  (ECF No. 41, 23).  Ultimately, however, defendants suggest that these rules are irrelevant, as it has not expanded the definition of rent in its lease: rent and maintenance charges are kept distinct.  HCAAC argues that it simply asserted its right to apply plaintiff's payment to other charges, leaving rent due.  As a result, "HCAAC did not seek possession based upon nonpayment of other charges, it sought rent." (ECF No. 41, 22).

Defendants' formalistic view ignores the practical effects of the clause.  Plaintiff here owed $192.00 in rent each month. She timely made her rental payments in this amount on March and April 1st.  (ECF No. 2-5, 1).  HCAAC diverted the payments towards maintenance, leaving an additional $192.00 due in rent for each month.  These outstanding payments were collected in a summary ejectment proceeding under R.P. § 8-401, as described supra.  The end result of this process is that plaintiff needed to pay $384.00—double her rent—in both March and April to ensure that she was not exposed to a summary ejectment proceeding and eviction for a failure to pay rent.

---

[11] In limited circumstances, Maryland courts have allowed parties to a commercial lease to voluntarily expand the definition of rent, such that charges for property damage, or for modifications to the premises by the landlord, are encompassed within the tenant's rent due and may be collected in a summary ejectment proceeding.  See, e.g., University Plaza v. Garcia, 279 Md. 61, 68 (Md. 1977); Shum v. Gaudreau, 317 Md. 49, 53 (Md. 1989). Defendants acknowledge, however, that a PHA is more limited in its ability to define rent.

The Court finds this process violates the Brooke Amendment. Plaintiff's maintenance charge effectively becomes rent: if it is not paid, plaintiff may be evicted for a failure to pay rent. This practice runs counter to the Brooke Amendment's distinction between the two charges.  See Brattleboro, 269 B.R. at 533 (A PHA may not "use a broader definition of rent as a basis for eviction under [state] law.").  Under the clause, an unwary tenant may double their "rent" due by simply sending in an unallocated rent check.  As such, the allocation clause deprives public housing tenants of the protection at the heart of the Brooke Amendment: a strict limit on the monthly amount a tenant must pay to ensure continued public housing.

Again, the Court is not convinced by defendants' stance that the tenant's option to write "rent" on their check, thereby avoiding the above process, saves the allocation clause. Defendants have pointed to no authority suggesting that a tenant may voluntarily waive his or her rights to the rent cap mandated by the Brooke Amendment.  Indeed, relevant case-law suggests that a tenant's agreement to a lease provision that expands the definition of rent is ineffective.  See Taylor, 796 A.2d 193 at 202; Binghamton, 630 N.Y.S.2d at 145.  While private landlords are given some lee-way under Maryland law to bargain over the definition of rent, PHAs do not have such discretion.  A PHA is obligated to abide by laws such as the Brooke Amendment,

implemented to protect its low-income tenants.  It may not put the onus on a tenant to ensure he maintains rights guaranteed under federal law.  Accordingly, the Court finds the clause is unlawful under the Brooke Amendment.

## C. Validity of the Allocation Clause Under the United States Housing Act

Plaintiff contends that the lease provision is not rationally related to a legitimate housing purpose and is therefore void as unreasonable under 42 U.S.C. 1437(d)(I)(2). "[B]ecause HCACC has complete discretion regarding when to implement this provision, it is arbitrary on its face." (ECF No. 40, 21).  A tenant's ability to bypass the clause by writing "rent" on his or her check is insufficient, plaintiff argues, to save the clause: "shifting the burden to the tenant by requiring them to write a magic word on a rental check does not change the fact that should a tenant fail to remember this detail the Housing Commission has the ability, at their option, to use the funds for an alleged debt that is not lawfully owed." (ECF No. 42, 10).

Defendants reply that the clause is narrowly drawn and tailored and "has a legitimate business purpose in collecting those charges that are the most difficult and often most expensive to recover, namely other charges." (ECF No. 36-1, 13).  The clause narrowly pursues this goal, defendants argue,

by allowing HCAAC "the opportunity to recover costs for which it has given the tenant proper notice in those limited cases where the tenant does not identify the payment's purpose." (Id.). The clause is not broad or overly discretionary because it "specifically allow[s] a tenant to opt out of the allocation by indicating a simple preference on how the payment should be applied: 'rent' or 'for rent.'" (Id.). As such, defendants argue that the clause is reasonable and plaintiff's claim under the Housing Act should fail. (Id. at 12).

Federal law gives well-performing public housing authorities "the maximum amount of responsibility and flexibility in program administration, with appropriate accountability to public housing residents." 42 U.S.C. § 1437. As a result, public housing authorities are given "considerable latitude when they take actions to address local concerns." Richmond Tenants Org., Inc. v. Richmond Redevelopment & Hous. Auth., 751 F. Supp. 1204, 1205 (E.D. Va. 1990), aff'd, Richmond Tenants Organization, Inc. v. Richmond Redevelopment & Hous. Auth., No. 91-2608, 1991 U.S. App. LEXIS 27694, at *942 (4th Cir. Nov. 8, 1991). As discussed previously, however, this discretion is substantially constrained by a variety of rules by which a housing authority must abide. One of these is the statutory requirement that public housing leases contain no "unreasonable" terms. Id.; 42 U.S.C. § 1437d.

Courts have found that this clause requires that lease terms be rationally related to a legitimate housing purpose.[12] Richmond, 751 F. Supp at 1205; Rucker v. Davis, 237 F.3d 1113, 1135 (9th Cir. 2001); Cabrini-Green Local Advisory Council v. Chigago Hous. Auth., No. 96 C 6949, 2007 U.S. Dist. LEXIS 6520, at *8-9 (N.D. Ill. Jan. 29, 2007). The determination is fact dependent, and reasonableness is "defined by the particular problems and concerns confronting the local housing authority." Richmond, 751 F. Supp at 1205. Clauses which are "arbitrary and capricious, or excessively overbroad or under-inclusive, will be invalidated." [13] Id.

The Court finds that the allocation lease provision is unreasonable under 42 U.S.C. § 1437(d)(I)(2). While it does assist HCAAC in the collection of maintenance and other fees (certainly a proper goal of management in the stewardship of government resources), it does so in a manner that undermines the purpose and principles of the Housing Act, including the

---

[12] In evaluating lease provisions, courts may also "consider the customary practice in the industry, as well as HUD regulations and commentary. If a provision is common in the industry or recommended by HUD, it will be considered presumptively reasonable." Richmond Tenants Org., Inc. v. Richmond Redevelopment & Hous. Auth., 751 F. Supp. 1204, 1212 (E.D. Va. 1990).

[13] In Richmond, the court found that two provisions of the lease in question were unreasonable. The first required that tenants refrain from the use, distribution, or sale of drugs or alcohol on the premises. Id. at 1206. The court found that while the provision had reasonable applications, it served to convert minor off-premises drug or alcohol offenses into grounds for eviction, in what the court found to be an "excessively severe sanction." Id. The second provision, which prohibited weapons of any type, was found to be overly broad because it could include non-dangerous items such as ceremonial swords or antique tomahawks. Id.

Brooke Amendment.  As already discussed at length, the provision is a trap for the unwary.  It allows rent-paying tenants to be subjected to expedited summary ejectment proceedings for a failure to pay rent.  It converts a tenant's absolute right under the law to certain procedural protections before eviction to a conditional right dependent on his remembering to fulfill that condition - to make a "designation" on a rent check.   In sum, it is a forced waiver of procedural rights in the public benefits arena where the tenant has no ability to negotiate a different contractual arrangement.  As such, the clause is unreasonable and in violation of § 1437(d)(I)(2) of the Housing Act.

## D. The Validity of the Allocation Clause Under the Due Process Clause

Plaintiff argues in Count V of her complaint that HCAAC's use of the lease provision deprives plaintiff and other similarly situated tenants of the opportunity to challenge "other" charges in violation of the due process protections of the 14th Amendment.  (ECF No. 40-1, 25).  Plaintiff contends that tenants have "no opportunity to defend the charge and are not afforded the full panoply of rights to representation of counsel and the opportunity to confront and cross examine witnesses." (Id.).  Defendants respond that plaintiff had "at least two opportunities" to file grievances which would have entitled her

to proceedings mandated by the 14th Amendment.  (ECF No. 41, 20).
Because plaintiff had "multiple opportunities to challenge the
charges against her and control her payments but failed to do
so," defendants argue that it has not denied her any opportunity
to challenge the charges.  (Id.).

A public housing tenant is entitled, under federal law, to an
administrative grievance procedure to challenge "any proposed
adverse public housing agency action."  42 U.S.C. § 1437d(k);
see also Sager, 855 F. Supp. 2d at 550.  This grievance
procedure includes, if necessary, the right to a hearing
conducted by an impartial person or panel.  24 C.F.R. §
966.55(b).  At the hearing a tenant has a right to counsel, to
present evidence and witnesses, and to cross-examine evidence
and witness presented by the PHA.  Id. § 966.56(b)(2-4).  While
the final decision of this person or panel is binding on the
PHA, the process is not a last resort for plaintiff: a failure
to bring a grievance, or an adverse decision, does not impact
the tenant's subsequent right to "judicial review in any
judicial proceedings, which may thereafter be brought in the
matter."  Id. at § 966.57(c).

As noted supra, the parties acknowledge a factual dispute as
to whether plaintiff had the opportunity to utilize this process
to challenge her maintenance charges prior to HCAAC's allocation
of plaintiff's rent payment.  Plaintiff argues that she was

denied this opportunity, and, as such, was denied pre-deprivation process. Defendants submit that plaintiff could have raised this issue in her grievance proceedings but chose not to.

This dispute is not material to the disposition of these cross-motions. The issue here is narrow, limited to the validity of the allocation clause in plaintiff's lease. The parties' factual dispute is confined to misconduct during plaintiff's grievance hearing—namely whether plaintiff attempted to raise the issue of maintenance charges and was denied the opportunity to do so. However, the issue of whether plaintiff's grievance was properly conducted in accordance with federal regulations is not before the Court. In order to prove her due process claim here for purposes of this motion, plaintiff must demonstrate that the allocation clause, itself, deprives her of due process to which she is entitled. She has failed to do so.

Plaintiff does not contend that the language of the clause denied her the right to challenge a maintenance charge prior to allocation. She has not presented evidence suggesting that it was HCAAC's practice to allocate charges prior to a grievance procedure. Indeed, plaintiff acknowledges that she was notified of her right to challenge the maintenance charges.

This scenario is distinct from the cases cited by plaintiff in support. In oral argument, plaintiff cited <u>Gonzalez v. County</u>

of Hidalgo, 489 F.2d 1043 (5th Cir. 1973).  There, plaintiff signed a lease which allowed the landlord, in the event of a default, "to enter upon the premises and remove all and sell said goods, chattels, fixtures and personal property . . . without notice."  Id. at 1044 (emphasis added).  The Court found that the clause was an invalid waiver of plaintiff's constitutional right to notice and a hearing prior to deprivation.

Unlike Gonzalez, the allocation clause does not allow HCAAC to allocate plaintiff's rent payment without notice or an opportunity for a hearing.  Plaintiff received notice of the charges against her, and was advised of her right to dispute those charges.  The clause was not exercised until after plaintiff's grievance was resolved, and, indeed, the lease prohibits HCAAC from imposing these "other charges" until "the grievance process has been completed."  (ECF No. 36-3, 7); see also Sager, 855 F. Supp. 2d at 555.  As such, plaintiff's case bears little semblance to the facts of Gonzalez.

Plaintiff does not argue that she is entitled to any process in addition to the grievance process mandated under federal law.  See Sager, 855 F. Supp. 2d at 562.  Plaintiff's claim is targeted at deficiencies in HCAAC's implementation of this procedure.  In oral argument, plaintiff's counsel noted that the procedure was deficient because it was not overseen by a neutral

decision-maker.  In briefing, plaintiff argues that the
procedure was deficient due to "HCAAC's clear intent that the
formal hearing was limited to the issue of lease termination."
(ECF No. 52, 2).  These are legitimate arguments, and may be
raised independently, but plaintiff has not demonstrated that
these deficiencies are a result of the presence of the
allocation clause in her lease.  The sole question before the
Court is whether the language or effect of the clause, alone,
deprived plaintiff of pre-deprivation process.  The Court finds
that is does not.

## E. The Validity of the Allocation Clause Under the Maryland Consumer Protection Act

Plaintiff alleges in Count I of her complaint that the
inclusion of the allocation clause in the lease constitutes an
unfair or deceptive trade practice under the MCPA.  Plaintiff
generally contends that the allocation clause results in severe
injury to plaintiff that outweighs the benefit it confers to
HCAAC.  (ECF No. 40, 16-18).  More specifically, plaintiff
offers several arguments why the provision is false and
misleading and therefore violative of the MCPA.

First, plaintiff alleges that because the allocation clause
streamlines the debt collection process, "HCAAC does not have a
legal right to the monies that they are converting."  (ECF No.
40, 13).  This argument largely tracks plaintiff's due process

claim, rejected infra.  Second, plaintiff contends that the provision gives defendants an additional, coercive means of collecting debt: if the tenant fails to pay, he may be subject to a summary eviction process.  Finally, plaintiff argues that the placement of the clause in a miscellaneous "other charges" section of the lease, as opposed to the rent section, was unfair or deceptive under the MCPA.  (Id. at 15).

In response to plaintiff's first argument, defendants argue that if a tenant disagrees with a charge, "she can simply designate where her payment is to be applied and indefinitely avoid paying the disputed charge, thereby forcing HCAAC to either sue for recovery of the charge or forcing it to file a legal action."  (ECF No. 41, 18).  Second, citing to Judge Hollander's earlier motion to dismiss opinion, defendants note that even if HCAAC were to exercise its contractual right to use plaintiff's monthly payment for other charges, plaintiff's right to challenge this action judicially remains intact.  (ECF No. 25, 41).

The MCPA was enacted to "set certain minimum statewide standards for the protection of consumers across the State." C.L. § 13-301; Wash. Home Remodelers, Inc. v. State, 426 Md. 613, 630 (Md. 2012).  The MCPA mandates that:

> A person may not engage in any unfair or deceptive trade practice . . . in:

(1) The sale, lease, rental, loan, or bailment of any consumer goods, consumer realty, or consumer services;
(2) The offer for sale, lease, rental, loan, or bailment of consumer goods, consumer realty, or consumer services;
(3) The extension of consumer credit; or
(4) The collection of consumer debts.

C.L. § 13-303.  Unfair or deceptive trade practices include any "false, falsely disparaging, or misleading statement, visual description, or other representation of any kind which has the capacity, tendency, or effect of deceiving or misleading consumers."  C.L. § 13-301.  The MCPA provides a non-exclusive list of unfair trade practices.  Id.; Wash. Home Remodelers, Inc. v. State, 426 Md. 613, 628 (Md. 2012).

The MCPA allows for both private and public actions, although private civil actions must be based on an actual injury or loss.  C.L. § 13-408(a) (creating a cause of action for "injury or loss" sustained "as the result of a practice prohibited by [the MCPA]"); see also Citaramanis v. Hallowell, 328 Md. 142, 151-153 (Md. 1992); Lloyd v. Gen. Motors Corp., 397 Md. 108, 143 (Md. 2007).

While the MCPA is primarily targeted at deceptive trade practices, it also offers a private cause of action for unfair trade practices.  Legg v. Castruccio, 100 Md. App. 748 (Md. Ct. Spec. App. 1994).  Relying on a lengthy analysis of the consumer unfairness doctrine espoused by the Federal Trade Commission,

the Maryland Court of Special Appeals determined that whether a trade practice was "unfair" under the MCPA turned primarily on the type of the injury suffered by the consumer. Id. at 767-71. The court determined that to be considered unfair under the MCPA, a trade practice must result in a: (1) substantial injury; (2) that is not outweighed by any countervailing benefits to the consumer or to competition that the practice produces; and (3) it must not be the type of injury that a consumer could reasonably have avoided. Id. at 768.

At the outset, it is clear based on the undisputed facts before the Court that HCAAC's conduct during the signing of the lease was not deceptive. Plaintiff has not argued that she was deceived as to the lease's terms or fraudulently induced into signing the document. While plaintiff complains that the allocation clause was in the "other charges" section of the lease, rather than the rental section, plaintiff's failure to read the entirety of the lease is not grounds for a claim under the MCPA. Bank of Am., N.A. v. Jill P. Mitchell Living Trust, 822 F. Supp. 2d 505, 536 (D. Md. 2011)(finding that the "willful blindness" of a consumer cannot give rise to a cause of action under the MCPA).

Plaintiff has a stronger claim under Legg, however, that defendants engaged in "unfair" trade practices. Plaintiff rightly notes that the harm here is substantial: the threat, to

a rent-paying tenant, of summary ejectment for non-payment of rent. This harm is particularly severe, as plaintiff notes, because for very low income tenants, alternate housing options are "virtually non-existent." (ECF No. 40-1, 16). The Court agrees that the potential injury to public housing tenants here is significant and actionable under the MCPA. Further, the Court finds that this injury is not outweighed by any countervailing benefits to consumers, such as Ms. Sager or "competition."

The third prong of the Legg test—whether the injury could have been reasonably avoided—is a closer issue. 100 Md. App. at 768. Defendants again note that any injury that resulted from their exercise of the allocation clause could have been easily avoided by plaintiff simply writing "rent" on her monthly check, thereby preventing HCAAC from allocating the rent to other charges. The exercise of this contractual clause, defendants argue, is entirely in the hands of the consumer.

As discussed supra, however, the Court is unconvinced by this argument. This holds particularly true under the MCPA. The principle underlying the reasonably avoidable injury test is that consumer choice is generally thought to guide the marketplace, such that it is "self-correcting." Id. at 769 (citations and quotations omitted). Outside intervention is

"viewed as necessary only when consumers are prevented from effectively making their own decisions." Id.

Unlike many areas of the economy, the marketplace for public housing units is not strongly guided by consumer choice. Public housing tenants generally have few housing options, little mobility, and do not negotiate lease terms. Accordingly, a tenant such as Ms. Sager may have no other option than to agree to a lease term that effectively places the burden on the tenant to ensure that her landlord abides by a commonly accepted—and legally mandated—definition of rent.[14] Shifting such a burden to consumers under a lease term they had little choice but to accept does not create a scenario where the consumer can "reasonably" avoid harm for purposes of Legg.[15] Id. As such, the Court finds that the Legg test is met here and the allocation clause violates the MCPA.

## F. Validity of the Allocation Clause Under the Federal Fair Housing and Amendments Act of 1988

Plaintiff alleges that defendants' practice of "unlawfully applying undesignated rental payments to alleged debt owed by

---

[14] While the injury to the consumer is the primary focus in a MCPA "unfairness" analysis, courts may look to "statutes or other sources of public policy to affirm that a practice is unfair." Legg, 100 Md. App. at 769 (citations and quotations omitted). It is clear here that it is both state and federal policy to protect public housing tenants from expedited evictions for breaches of the lease other than a failure to pay rent. See Sections III (A) and (B) supra.

[15] The Court notes in the context of a private lease, which is subject to less regulatory oversight and which is likely negotiated by parties of relatively equal bargaining power, such a term would not necessarily be violative of the MCPA.

senior and disabled individuals" has a "discriminatory impact on a protected class" in violation of the Fair Housing Act. (ECF No. 40, 23-24). Plaintiff argues that her primary source of income is Supplemental Security Income—an income source not subject to execution, levy, attachment, garnishment, or other legal process under 42 U.S.C. 407(a). Plaintiff further argues that "HCAAC's taking of those funds designated or not, constitutes an illegal taking." (ECF No. 40, 24).

Defendants reply that plaintiff "fails completely to explain how HCAAC's taking of a payment voluntarily tendered and made without any restriction rises to the level of an attachment or conversion." (ECF No. 41, 17). Again, defendants contend that "plaintiff had the right to give instruction and delegate the payment but failed to take advantage of her option. Her action is no fault but her own." (ECF No. 41, 17).

While the Court has unequivocally rejected the allocation clause under both federal and state statutes, it does not understand this claim. Plaintiff has failed to explain how an "illegal taking" has occurred and has failed to identify supporting authorities. No violation of the Act has been demonstrated.

IV. Conclusion

In conclusion, for the reasons set forth above, and for the limited issue of the validity of the allocation clause, the

Court GRANTS plaintiff's motion for partial summary judgment as to Counts I, II, and III, of her Amended Complaint and DENIES plaintiff's motion for partial summary judgment as to Counts IV and V.  In turn, the Court DENIES defendants' motion for partial summary judgment as to Counts I, II, and III, and GRANTS defendants' motion for partial summary judgment as to Counts IV and V.  A separate order will follow.


Date: 7/30/2013                          /s/
                              Susan K. Gauvey
                              United States Magistrate Judge